both in the State of New York and the State of Pennsylvania." We think it is unnecessary to send the case to a jury trial merely to determine the amount of the mesne profit, which amount is asserted by the plaintiff to be $1500, and not categorically denied by the defendant's affidavit of defence.

---

## Brown's Estate.

*Inheritance Transfer Tax Act—Collateral inheritance—Retroactive legislation—Appointment of fund to collaterals of donee of power—When tax charged on residue, claim to be made at audit of donee's executor's account—Act of June 20, 1919.*

1. The Inheritance Transfer Tax Act of June 20, 1919, P. L. 521, is not retroactive.

2. Whether the Commonwealth may collect collateral inheritance tax on a fund passing to collaterals under the execution of a power of appointment on the audit of the account of the trustee on the death of the appointee, when the official appraiser has made no claim for the tax upon the audit of the trustee's account on the death of the donee of the power, is at least doubtful.

3. When the will of the donee of the power makes the appointment "free of collateral inheritance tax" and charges the tax on the residuary estate, the Commonwealth cannot maintain a claim for the tax at the audit of the account of the trustee of the fund on the death of the appointee; such claim, it seems, should have been made upon the audit of the account of the donee's executor.

Exceptions to adjudication of trustee's account. O. C. Phila. Co., April T., 1917, No. 403.

LAMORELLE, P. J. (auditing judge):

William Brown died March 1, 1842. By will he directed that two-thirds of his residuary estate should be divided equally among his seven children, *nominatim*, the shares of his daughters, of whom Fanny Brown was one, to be held by his trustee for their sole and separate use, the income to be paid them for life, &c. The will proceeded: "And on the death of my said daughters, or either of them, the share or shares of the daughter or daughters so dying shall be held by the said trustees in trust for the use and benefit of her or their issue (if any) then living, and in default of such issue, for the use and benefit of such person or persons as my said daughters, respectively, so dying shall after attaining full age, by any instrument of writing executed in the presence of two witnesses notwithstanding any coverture direct and appoint, and in default of such appointment, to and for the use and benefit of my then surviving children and the issue then living of such as shall be deceased, such issue to take such share as their deceased parent would have taken if living."

Fanny Brown, one of his daughters, died April 4, 1916, testate and without issue.

She exercised the power of appointment by her will in language following: "As to the estate devised and bequeathed by the will of my father, William Brown, to the Trustees named therein for my benefit now held by the Pennsylvania Company for Insurances on Lives and Granting Annuities, in Trust for me and over which I hold a power of appointment, I hereby declare it is my intention to exercise said power, I hereby devise and bequeath and by virtue of said power do appoint the same as follows:

"I direct my said Trustees to pay the income thereof to my sister Emily H. Glover for and during the term of her life and upon her death to assign,

transfer and pay over the *corpus* or principal of said fund to my niece Debbie A. Glover absolutely and in fee simple.

"Should my said niece die before her mother then to pay over the principal as her said mother shall direct by her last will and in default or failure for any cause of such appointment, I direct said fund to be treated as part of my residuary estate."

Thereupon the Pennsylvania Company for Insurances on Lives and Granting Annuities, substituted trustee under the will of William Brown, deceased, filed an account of the remainder of the trust estate which was then held for two surviving daughters, said Fanny Brown and Emily H. Glover. This account was audited Nov. 6, 1916, and one-half of the fund, less commissions, fees, expenses, &c., was awarded the same company as trustee for Emily H. Glover by virtue of the exercise of the power of appointment by Fanny Brown. This award amounted to $29,435.55, as shown by schedule approved Nov. 29, 1916 (O. C. Phila. Co., April Term, 1879, No. 444).

At the audit, the Commonwealth made no claim for collateral inheritance tax. None was allowed in and by the adjudication.

Emily H. Glover, the appointee for life by the will of Fanny Brown, died June 15, 1922, survived by a daughter, Deborah A. Glover, who, by virtue of the exercise of the power of appointment by said Fanny Brown, became entitled to the *corpus* of the trust estate. Thereupon the Pennsylvania Company for Insurances on Lives and Granting Annuities filed this account as trustee, and the Commonwealth puts in a claim for collateral inheritance tax under the Act of June 20, 1919, P. L. 521.

In Dick's Estate, 30 Dist. R. 839, following Gilmer's Estate, 26 Dist. R. 949, we held that the Act of July 11, 1917, P. L. 832, imposing a tax on lineal inheritance, had no retroactive effect. In Hutchinson's Estate (July Term, 1921, No. 313), the judge who audited refused to give a retroactive effect to the Act of June 20, 1919, P. L. 521, to which ruling the Commonwealth filed no exceptions. If, therefore, this fund formed a part of the estate of Fanny Brown, and as such passed from her, as to which see Ritchie's Estate, 24 Dist. R. 510; Mifflin's Appeal, 121 Pa. 205; Evans's Estate, 11 Dist. R. 730, it was taxable under the Act of May 6, 1887, P. L. 79. Whether the Commonwealth may now collect tax is at least doubtful. See Monypenny's Estate, 181 Pa. 309; Hyde's Estate, 1 D. & C. 670. By stipulation hereto attached, marked "A," it appears that tax on the estate of Fanny Brown, deceased, was duly assessed and was paid June 28, 1916. It further appears that in making up the estate for taxation purpose, the taxing authorities did not include the trust estate, which passed because of the exercise of the power of appointment, and which covers the fund which is the subject of the present account. The will of Fanny Brown, deceased, must necessarily have been before the official appraiser. Whether this fund was ignored because it was considered to be and taken as part of the estate of William Brown, donor of the power, who died in 1842, and passed to lineals, and, therefore, not taxable under Com. *v.* Williams's Executors, 13 Pa. 29, need not now be treated at length.

The will of Fanny Brown, with reference to taxes, contains these clauses:

"Item: . . . All the above legacies and bequests are to be free of all collateral inheritance tax and all United States succession tax and without deduction for the same the said taxes to be paid out of my residuary estate.

"I include in this provision the appointment I have made of the estate of my father, hereby providing and directing that the said fund, should it be liable for any succession or inheritance tax, shall be transferred without any deduction for the tax or taxes aforesaid."

2 D. & C.

Thus was notice brought home to the official appraiser in 1916.

For the purpose of this adjudication, the auditing judge rules that this is neither the time nor the place for an allowance of the Commonwealth's claim, and it is accordingly dismissed. The executors of the will are not before the auditing judge (see Dick's Estate, 273 Pa. 69), and the fund which is before him is in terms exonerated, and the tax, if any, thrown upon the residuary estate of Fanny Brown, deceased.

The balance, principal and income, $28,975.02, composed as in the account set forth, is awarded as follows: To the executrix of the will of Emily H. Glover, her share of income prorated to time of her death upon compliance with section 57 *(f)* of the Fiduciaries Act, in that she is a non-resident, and the rest to Deborah A. Glover, and payment and distribution is so decreed, with leave to make any and all necessary assignments and transfers.

And now, to wit, Sept. 28, 1922, the account is confirmed *nisi.*

Exceptions were taken by the Commonwealth.

*William M. Boenning,* for Commonwealth, exceptant.

*Raymond M. Remick* (of *Saul, Ewing, Remick & Saul*), contra.

HENDERSON, J., Dec. 1, 1922.—Nothing need be added to what has been so well said by the auditing judge. The exceptions are dismissed and the adjudication is confirmed absolutely.

GEST, J., did not sit.

---

## Harkins's Estate.

*Decedents' estates—Claims against—Board, wages, attendance at funeral —Findings of auditing judge.*

1. Where it was the custom of decedent to pay his board every two weeks, and it is the uncontradicted testimony that he had not paid claimant the amount due for board for the two weeks immediately preceding his death, the claim was allowed.

2. Where claimant and decedent were brothers-in-law and decedent made his home with claimant, a claim for loss of wages during decedent's last illness and for the time intervening between his death and burial was not allowed.

3. The finding of fact by an auditing judge is conclusive in the absence of manifest error.

Exceptions to adjudication. O. C. Phila. Co., July T., 1922, No. 553.

*Ulysses S. Koons,* for exceptions; *Daniel C. Donoghue,* contra.

GUMMEY, J., Nov. 24, 1922.—Two sets of exceptions are before us; those filed on behalf of Michael Roach relate to the refusal of the auditing judge to allow him for two weeks' board of the decedent at $10 per week, and the further sum of $40, representing loss of wages during the decedent's last illness and the period intervening between his death and burial, the decedent having been taken ill on Thursday night and dying the Sunday following.

We think that the auditing judge should have allowed the claim for board. It appears that it was the custom of the decedent to pay his board every two weeks, and it is the uncontradicted testimony that the decedent had not paid the claimant the amount due for board for the two weeks immediately preceding his death. This claim is, therefore, allowed.

We see no reason, however, for allowing this exceptant's claim for loss of wages. In view of the fact that the claimant and the decedent were brothers-in-law and that the decedent had been boarding with the claimant and his wife for a number of years prior to his death, it was entirely proper that the